**STATE of Minnesota, Respondent,**

v.

**Edith Kay KIELEY, Appellant.**

**No. C5–87–535.**

Court of Appeals of Minnesota.

Oct. 20, 1987.

Hubert H. Humphrey, III, Atty. Gen., James B. Early, Sp. Asst. Atty. Gen., St. Paul, Larry Mickelberg, Clay County Atty., Moorhead, for respondent.

Brian W. Nelson, Fargo, N.D., for appellant.

Considered and decided by NORTON, P.J., and MULALLY and LOMMEN, JJ.,* with oral argument waived.

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

## OPINION

A. PAUL LOMMEN, Judge.

This is an appeal from a judgment of conviction for gross misdemeanor driving while under the influence, Minn.Stat. § 169.121, subds. 1(a) and 3(a) (1986), and from an order denying a new trial. We affirm.

## FACTS

On October 3, 1986, appellant Edith Kieley was arrested in Moorhead on suspicion of DWI after failing a roadside screening test. She was taken to the police station for possible chemical testing. A video tape recording was made of the booking procedure, the implied consent advisory and the breathalyzer test.

Kieley asked for an attorney almost at the beginning of the tape. She repeated this request several times, despite the officer's statement to her that she was not entitled to an attorney until after she made her decision whether to submit to testing. The implied consent advisory was read three times. Kieley still wanted to know what her options were, yet felt she had no choice because the choice rested with the police.

After the breathalyzer test was begun, the administering officer informed Kieley she was not blowing hard enough, that the tone on the machine had to continue for 10 seconds. Kieley, however, did not blow hard enough to sustain the tone. The officer warned Kieley a failure to give an adequate sample would be counted as a refusal. When the breathalyzer record showed a deficient sample, she was offered a second opportunity. She failed again the second time to blow hard enough into the machine. The officer then ended the test, counting it as a refusal. However, two readings of the deficient samples were obtained, showing blood alcohol levels of .205 and .192.

At the omnibus hearing, a forensic chemist testified the machine was operating properly, and the test results were consistent with each other. He testified that an adequate sample would almost certainly have yielded an even higher result, and that the true blood alcohol level was at the lowest .18. The trial court denied Kieley's motion to suppress this evidence and allowed the readings into evidence.

After the test was ended, Kieley was given an opportunity to call her attorney. This conversation was recorded on videotape, and apparently shown to the jury, as follows:

> MS. KIELEY: Uh-huh. Hi, Brian. This is Edie. Edith Kieley. Hi. I'm in Moorhead at the precinct. Well, they don't like me here. Yeah. Oh, yeah. They wouldn't let me have one. Yeah. It was because I couldn't have any until like I had to have the tests and then you can come her. Okay. Bye.

The officer then refused to allow Kieley to wait for her lawyer before taking another test. She was encouraged to call her lawyer back and tell him not to come, but she declined. The test was counted as a refusal.

The trial court instructed the jury it could consider the deficient sample readings as partial tests, relevant to the issue whether Kieley was under the influence of alcohol. Kieley has not furnished a full trial transcript on appeal. The parties dispute whether Kieley made any objection to this instruction, or to the introduction of the booking tape into evidence.

## ISSUES

1. Did the trial court abuse its discretion in admitting the videotape of the booking procedure, breathalyzer test and conversation with Kieley's attorney?

2. Did the court abuse its discretion in admitting the breathalyzer test results of deficient samples?

## ANALYSIS

### I.

■ Kieley contends the trial court abused its discretion in allowing the "booking" videotape to be admitted into evidence.

This court held in *State v. Breeden*, 374 N.W.2d 560, 562 (Minn.Ct.App.1985), that

introduction of a booking videotape in a DWI prosecution did not violate the driver's fifth amendment rights. This court held the tape was "real evidence of intoxication," admissible as such, except for portions of the tape showing questions which the driver had already failed to answer. *Id.*

■ The tape also included Kieley's end of her brief conversation with her attorney. This portion of the tape should have been deleted as irrelevant and as a violation of the statutory right to contact counsel. Minn.Stat. § 481.10 (1986); Minn.Stat. § 169.123, subd. 2(b)(4) (1986) (right to a private interview at the place of custody). The videotape, however, recorded no more than a conversation referring to Kieley's right to counsel and, implicitly, her attorney's plan to come down to the station house. Kieley had repeatedly requested counsel throughout the booking and test procedure. She made no admissions or inculpatory statements. The admission of the brief telephone conversation did not likely play a substantial part in influencing the jury to convict. *See State v. Darveaux,* 318 N.W.2d 44 (Minn.1982) (harmless error test for error in the reception of evidence not of a constitutional dimension).

## II.

■ The trial court determined at the omnibus hearing to admit the two deficient samples given by Kieley. Based on expert testimony, they showed her blood alcohol level was at least as high as the level shown.

The DWI statute provides:

The foregoing provisions do not limit the introduction of any other competent evidence bearing upon the question whether or not the person was under the influence of alcohol or a controlled substance, including * * * results obtained from partial tests on an infrared breath-testing instrument. A result from a partial test is the measurement obtained by analyzing one adequate breath sample * * *.

Minn.Stat. § 169.121, subd. 2 (1986).

We agree with Kieley that the court erred in its jury instructions by referring to

the deficient samples as "partial tests." This error was of no effect, however, if the deficient sample readings were admissible as "other competent evidence bearing upon the question" of intoxication. *Id.*

The trial court concluded the statutory list of "other competent evidence" which could be admitted was not exclusive. Since there was expert testimony showing the deficient samples were competent evidence of intoxication, the court ruled the evidence could be received.

The determination of the competency of evidence is within the sound discretion of the trial court. *Cf. State ex rel. Dugal v. Tahash,* 278 Minn. 175, 177, 153 N.W.2d 232, 234 (1967) (determination of competency of witnesses is discretionary and is to be made by preliminary examination). The trial court heard the testimony of Rick Wanderi, a forensic chemist, at the omnibus hearing. Wanderi testified the Intoxilyzer was working properly, that the air the machine was analyzing was not deep lung air, as it is set up to measure when the test subject gives an adequate sample, but that even if Kieley had given an adequate sample, the result would not have differed by more than .01, and it probably would have been a higher result. This testimony, which was unimpeached and unrebutted, was sufficient to establish that the deficient sample readings provided evidence of Kieley's blood alcohol level. Since the statute does not *exclude* the use of such evidence, the trial court was within its discretion in admitting it upon a showing of competency.

We have considered the trial errors alleged by Kieley although she has not provided a full transcript showing proper objections and the effect of any error. *See State v. Anderson,* 351 N.W.2d 1, 2 (Minn. 1984) (without a complete transcript or appropriate stipulation defendant claiming trial error normally cannot obtain a new trial).

## DECISION

The trial court did not abuse its discretion in admitting the "booking" videotape

into evidence. The court did not abuse its discretion in ruling the deficient sample readings were competent evidence of intoxication.

Affirmed.