381 S.E.2d 241

**STATE of West Virginia**

v.

**Guy F. WILKINSON.**

No. 18634.

Supreme Court of Appeals of West Virginia.

May 16, 1989.

Stuart Calwell, Calwell, McCormick & Peyton, Charleston, for Guy F. Wilkinson.

Richard M. Riffe, Asst. Atty. Gen., Charleston, for the State.

PER CURIAM:

The defendant in this proceeding, Guy F. Wilkinson, was convicted in the Circuit Court of Putnam County on July 27, 1987, of driving under the influence of alcohol, second offense. He was sentenced to one year in the Putnam County Jail. On appeal he claims that the trial court erred in denying him a continuance of his trial date. He also claims that the court erred in permitting the prosecuting attorney to introduce evidence relating to an earlier conviction of driving under the influence of alcohol and evidence relating to the results of a breathalyzer test. After reviewing the record this Court can find no reversible error. Accordingly, the judgment of the Circuit Court of Putnam County is affirmed.

In the early morning hours of March 4, 1987, a Nitro City patrolman, Gregory D. Winter, observed the defendant's vehicle weaving back and forth on Route 25 as it approached 40th Street. At one point the car went off the road onto the berm and then moved across the dividing line of two north bound lanes of traffic. Officer Winter stopped the car and asked the defendant, who was driving, to get out.

When the defendant got out, the officer noticed a "large odor of alcohol coming from the vehicle." Officer Winter administered a field sobriety test consisting of the performance of various walking exercises, balance exercises, and physical dexterity exercises. As a result of the field sobriety test, Officer Winter placed the defendant under arrest for driving under the influence of alcohol. Officer Winter then took the defendant to the Nitro Police Department where the defendant submitted to a breathalyzer test on an Intoxilyzer 5000 machine. During that test the defendant did not exhale an optimum-sized breath sample into the machine. The machine, nonetheless, measured the alcohol content of the sample which was available. It showed that the defendant was intoxicated. The result of the test, however, was labelled a "deficient sample" because it was based on less than an optimum breath sample.

The defendant had previously been convicted of driving under the influence of alcohol, and at the police station he informed Officer Winter that he had been sick, that he had injuries to his back and neck. There is also some indication that he had lung disease.

The defendant was tried for driving under the influence of alcohol, second offense, before a Putnam County magistrate on April 28, 1987. At the conclusion of that trial the defendant was found guilty and released on bond. He later filed an appeal in the Circuit Court of Putnam County on May 15, 1987.

A trial de novo before a jury was scheduled in the circuit court for July 27, 1987. Several weeks before that date the defendant visited the medical offices of Elias Haikal for the purpose of obtaining breathing tests to determine his physical ability to successfully complete a breathalyzer test. As a result of the physical examination, the defendant, according to the documents in the present proceeding, proposed to call Dr. Haikal to testify at his July 27, 1987 trial. He, however, did not include Dr. Haikal's name on his proposed witness list, and he did not subpoena Dr. Haikal to attend the trial.

On July 23 or July 24, 1987, just prior to the July 27, 1987 trial date, the defendant learned that his aunt, who was suffering from cancer, was scheduled for surgery on July 27, 1987, the proposed trial date. The aunt, who lived with the defendant, was blind and dependent upon the defendant for care. Her physician requested that the defendant be present on the day of surgery. After learning of this development, the defendant contacted his attorney and requested that the trial in the circuit court be continued to some day other than the day of his aunt's surgery. The defendant's attorney contacted the prosecuting attorney's office and learned that the circuit judge was out of town and could not entertain a motion for continuance prior to trial.

On the morning of trial, July 27, 1987, the defendant learned that his medical expert, Dr. Haikal, who had been out of town over the weekend, due to a change in air-

line scheduling could not attend trial on July 27, 1987. He, therefore, moved for a continuance based on Dr. Haikal's unavailability for trial. He also moved for a continuance because of the medical emergency involving the aunt.

In spite of the circumstances, the trial court denied a continuance, and a jury trial was conducted. At the conclusion of the trial the defendant was found guilty of driving under the influence of alcohol, second offense. On July 29, 1987, he was sentenced to the Putnam County Jail for a period of one year.

In the present proceeding the defendant's first contention is that the trial court erred in denying him a continuance of the trial date. The defendant argues that he should have been granted a continuance for two reasons. First, he claims that on the morning of trial he learned that his medical expert, who had been out of state over the weekend of July 25, 1987, due to a change in airline scheduling, would be unable to attend trial on July 27, 1987. Second, he claims that the court should have granted a continuance because of his aunt's physician's request that he be present for the surgery on his aunt which was scheduled for the early morning hours of July 27, 1987.

■ In *State v. Bush,* 163 W.Va. 168, 255 S.E.2d 539 (1979), this Court discussed the granting of continuances in criminal trials. The Court concluded in syllabus point 2 that:

> A motion for continuance is addressed to the sound discretion of the trial court, and its ruling will not be disturbed on appeal unless there is a showing that there has been an abuse of discretion.

The Court also indicated that whether there has been an abuse of discretion in denying a continuance must be decided on a case-by-case basis.

In the present case, the defendant argues that had Dr. Haikal been present at trial, he would have had evidence to rebut the arresting officer's conclusions as to his failure to give a full sample on the breathalyzer test.

■ Generally, to warrant a continuance on the basis of the absence of material witness it is necessary that the party seeking the continuance use due diligence to procure the attendance of the witness. It is also incumbent upon the party to show the materiality and importance of the witness's proposed testimony to the issues to be tried. *State v. Burdette,* 135 W.Va. 312, 63 S.E.2d 69 (1950). If the facts upon which the motion for continuance is based are not before the court, the party seeking the continuance must support his motion by a sufficient affidavit showing such facts. *State v. Vance,* 168 W.Va. 666, 285 S.E.2d 437 (1981). Mere conclusionary statements by the affiant without more are not sufficient. *State v. Whitecotten,* 101 W.Va. 492, 133 S.E. 106 (1926).

■ In the case presently before the Court, the defendant did not include Dr. Haikal's name on his witness list, and Dr. Haikal was not subpoenaed to attend the trial. In fact, there is some indication that the first time that the State was made aware of Dr. Haikal was on the morning of trial. The defendant did not file an affidavit relating to the unavailability of Dr. Haikal or to the character of his proposed testimony.

Under the circumstances of the case, this Court cannot conclude that the defendant used due diligence to procure the attendance of Dr. Haikal or established the materiality and importance of his evidence as is required under our law.

■ It also appears that the defendant was aware of his aunt's operation on Thursday before the trial scheduled on Monday. The defendant and the prosecutor discussed the matter on Friday, yet no formal affidavit was prepared setting forth the circumstances. There is also some evidence that surgery was not actually performed on the aunt on the trial day.

Overall, after reviewing the record this Court believes that the defendant has failed to show that the trial court abused its discretion in refusing to grant a continuance.

■ The defendant also argues that the trial court erred in permitting the prosecuting attorney to introduce during his trial evidence of his earlier conviction for driving under the influence of alcohol. He argues that evidence of prior crimes is not generally admissible in a criminal case, and he asserts that the prejudicial effect of the prosecutor's informing the jury of his prior conviction for drunk driving led the jury to believe that if the defendant drove once under the influence, he would do it again.

In note 1 of a similar case, *State v. Cozart*, 177 W.Va. 400, 352 S.E.2d 152 (1986), this Court stated:

> The defendant also argues the trial court erred in allowing the State to admit evidence that he had been convicted of driving under the influence of alcohol on two prior occasions. In support of this argument, the defendant cites *State v. McAboy*, 160 W.Va. 497, 236 S.E.2d 431 (1977), where we held that a defendant in a criminal case who elects to testify may have his credibility impeached by showing prior convictions of perjury or false swearing.

> The defendant's credibility is not the issue in the present case ... The issue is whether the defendant was guilty of a third offense of driving under the influence of alcohol, in violation of W.Va. Code, 17C–5–2(i) (1983). Obviously, where a prior conviction is a necessary element of the current offense charged or is utilized to enhance the penalty after a jury finding that the defendant has committed such prior offense, it is admissible for jury purposes and *McAboy* is not applicable.

In the later case of *State v. Barker*, 179 W.Va. 194, 366 S.E.2d 642 (1988), the Court refused to reverse a conviction where the assertion was that the trial court erred in admitting evidence of his prior convictions for driving under the influence of alcohol.

In the present case, the defendant was charged with second offense driving under the influence. Obviously, it was necessary for the State to prove that he was convicted a first time in order to prove the second offense. As indicated in *State v. Cozart, supra*, evidence of the first offense was clearly admissible under the circumstances.

■ The defendant lastly claims that the trial court erred in permitting evidence of a breathalyzer test, based on a deficient sample, to go to the jury and in permitting an unqualified police officer to testify as to the meaning of a "deficient" sample.

It appears that when the State administered the breathalyzer test, the defendant failed to give the machine a full sample. During trial the State sought to introduce the breathalyzer results into evidence. Defense counsel protested on the ground that the State had not established a proper foundation for the admission of the evidence. The State then adduced evidence showing that the test had been conducted in compliance with the rules and regulations issued by the Department of Health in regard to the Intoxilyzer 5000. The State also adduced the testimony of Officer Gregory D. Winter of the Nitro Police Department, who had performed the Intoxilyzer test upon the defendant. Officer Winter testified that he had been given special training on the Intoxilyzer 5000 and that his training indicated that the fact that a sample as a "deficient" sample did not affect the validity of the results.

In syllabus point 4 of *State v. Dyer*, 160 W.Va. 166, 233 S.E.2d 309 (1977), this Court stated that:

> In the trial of a person charged with driving a motor vehicle on the public streets or highways of the state while under the influence of intoxicating liquor, a chemical analysis of the accused person's blood, breath or urine, in order to be admissible in evidence in compliance with provisions of W.Va.Code, 17C–5A–5, "must be performed in accordance with methods and standards approved by the state department of health." When the results of a breathalyzer test, not shown by the record to have been so performed and administered, are received in the trial evidence on which the accused is convicted, the admission of such evidence is prejudicial error and the conviction will be reversed.

In the case presently before the Court, there is evidence that the intoxilyzer test results introduced against the defendant resulted from a test performed in accordance with the methods and standards approved by the State Department of Health. There was also evidence from Gregory D. Winter, the individual who performed the test and who had special training on the Intoxilyzer 5000 machine, that the test results were valid, according to the training which he received, even though a deficient sample was taken.

In view of all the evidence presented, this Court cannot conclude that the defendant has established that admission of the intoxilyzer results was prejudicial.*

For the reasons stated, the judgment of the Circuit Court of Putnam County is affirmed.

Affirmed.

---

* In at least one case where substantial expert evidence was adduced, an appellate court recognized that a deficient sample does not result in more than a very minimal variation in the alcohol reading of a breathalyzer machine. *State v. Kieley,* 413 N.W.2d 886 (Minn.1987). The Court concluded that admission of a deficient sample did not constitute error. In spite of this, there is some suggestion that a deficient sample utilized by an Intoxilyzer 5000 machine might, under certain special circumstances, result in inaccurate readings. *See* 3 R. Erwin, *Defense of Drunken Driving Cases* § 24A.12[8] (3d ed. 1989). In the case presently before the Court, the defendant offered no evidence showing that the specialized circumstances mentioned in that authority were present at the time he took the Intoxilyzer 5000 test, and no expert evidence relating to the invalidity of the results obtained was produced.